IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

CHARLES H. LEE,                )
                               )
    Plaintiff,                 )
                               )
vs.                            )
                               )   No.  12-2230-JTF/tmp
SWIFT TRANSPORTATION COMPANY   )
OF ARIZONA, LLC,               )
                               )
    Defendant.                 )

_____

REPORT AND RECOMMENDATION
_____

Before the court by order of reference is Defendant's Motion for Summary Judgment. (ECF No. 37.) For the reasons below, it is recommended that the motion be granted.

I. PROPOSED FINDINGS OF FACT

A. The Complaint

On March 22, 2012, plaintiff Charles H. Lee filed a *pro se* complaint alleging that defendant Swift Transportation Company of Arizona, LLC ("Swift") engaged in unlawful discrimination and retaliation when it terminated his employment. (ECF No. 1.) Lee's complaint alleges as follows:

> [I] Became very ill and had to be hospitalize[d] in [Gallup, New Mexico] because of Mentor George Quinn. While in Jackson [Mississippi] for hospital appointment I received a letter in the mail saying that I had been fired. I got sick and had to be hospitalize[d] in [Gallup] N.M. I got sick because I was not allowed to

use the bathroom for about (5) hours. After I received
the letter I called the company to get more information
and was informed that I had made some sort of threat
against (3) three of my Mentors. This never happened.
I haven't threatened any. All of this happen[ed] after
I got sick which they are responsible for. All of this
happen[ed] after I was hospitalize[d]. If what they say
is true, why was [I not] fired after I threaten[ed] the
first Mentor, why wait until I had threatened (3) three
Mentors.

(Id. at 3.) Attached to the complaint is the Charge of Discrimination that Lee filed with the Equal Employment Opportunity Commission ("EEOC") in October 2011. (ECF No. 1-1.) The Charge states as follows:

I was hired on June 7, 2011, as a Truck Driver. On or
about September 13, 2011, I was discharged. I was told
that I made a threat against the other drivers who
trained me with violence. I believe I have been
discriminated against because of my disability, in
violation of the Americans With Disabilities Act of 1990
(ADA), Title VII of the Civil Rights Act of 1964, as
amended in retaliation and in violation of the Age
Discrimination in Employment Act of 1967 (ADEA) because
of my age (64) in that: I had one week left before I
would have received my own truck. I filed several
grievances with my employer.

(Id. at 1.) Lee received his Right to Sue notice on or about December 27, 2011, and timely filed this lawsuit on March 22, 2012. After the parties had an opportunity to engage in discovery, Swift filed the instant Motion for Summary Judgment on July 12, 2013. Lee filed a response in opposition on October 3, 2013, and Swift filed a reply on October 9, 2013. Lee's response consists of a nine-page statement which sets forth his version of the events. However, because the statement does not bear a notarial seal, was

not given under oath, and is out of compliance with the requirements of an unsworn statement under 28 U.S.C. § 1746, the court cannot consider this document as evidence. See <u>Davis v. City of Memphis Fire Dept.</u>, 940 F. Supp. 2d 786, 799 (W.D. Tenn. 2013). Moreover, Lee's statement does not comply with Local Rule 56.1(b), which requires the non-moving party to respond to each fact set forth by the movant and to support each disputed fact with specific citations to the record. Therefore, the court will rely on the Defendant's Statement of Material Facts in deciding the instant motion.[1]

**B. Material Facts**

Swift hired Lee on or about June 10, 2011, as a trainee driver at a pay rate of fifty dollars per day. (Def.'s Statement of Material Facts ("SMF") ¶ 1; Lee Dep. ("Ex. 1"), 165:23-166:24; Ex. 24.) Before becoming a solo driver, a trainee driver must complete a six-week apprenticeship program where the trainee drives with an

---

[1] Lee's response primarily focuses on his claim that his first mentor, George Quinn, did not permit Lee to take a bathroom break for several hours while Quinn accompanied Lee on a cross-country delivery, ultimately resulting in Lee's hospitalization. Lee's response also alleges that Quinn harassed him. The only allegations contained in his response that arguably touch upon the issues raised in the Motion for Summary Judgment include the following: (1) "I can't imagine anyone of a young working age being treated as poorly as I was"; (2) "[Swift] does not treat all of their employees the same"; (3) Swift falsely accused him of making threats against his mentors; and (4) Swift's investigation that resulted in his termination was inadequate. Even if the court were inclined to give some evidentiary weight to Lee's response, these unsupported, conclusory allegations do not raise a genuine dispute as to any material fact.

experienced "mentor" driver. (SMF ¶ 2; Ex. 3, § 2, at 33; Ex. 4.) Three different mentors trained Lee during his employment with Swift. (SMF ¶ 3; Ex. 24.) Lee's supervisor was Driver Manager Daphne Robinson. (SMF ¶ 3; Ex. 1, 168:14-15.) From approximately June 12, 2011 to July 22, 2011, George Quinn mentored Lee. (SMF ¶ 4; Ex. 1, 168:2-3; Ex. 6, at 4-24.) Lee and Quinn departed from Kingdom City, Missouri on June 16, 2011, and arrived in Salt Lake City, Utah on June 18, 2011. (SMF ¶ 7 n.2; Ex. 6, at 6.) Lee testified at his deposition that it was during this trip that he began to have urinary problems, including "leakage" and an odor. (SMF ¶ 7; Ex. 1, 177:7-15, 178:8-13, 184:19-23, 189:17-19.) The day after Lee and Quinn arrived in Salt Lake City, Lee drank some water at a truck stop. (SMF ¶ 8; Ex. 1, 185:9-20.) Lee's urinary problems began during the drive from Missouri to Salt Lake City, although he also testified that Quinn poisoned Lee's water at the truck stop in Salt Lake City. (SMF ¶ 8; Ex. 1, 177:7-15, 178:8-13, 184:6-189:19.)

On June 20, 2011, Lee and Quinn departed Salt Lake City. (SMF ¶ 9 n.4.) They arrived in Ship Rock, New Mexico on June 22 at 6:30 a.m. (SMF ¶ 8; Ex. 6, at 4). Lee was admitted to the hospital in Gallup, New Mexico, on June 22, and underwent some medical procedures over the next couple of days. (SMF ¶ 8; Ex. 6, at 4; Ex. 7; Ex. 9.) Lee returned to his home in Bentonia, Mississippi on or about June 27, 2011. (SMF ¶ 10; Ex. 6, at 11.) On June 28,

Lee saw the Swift medical examiner, who noted that he had been hospitalized and had an indwelling catheter, but had no follow-up plans. (SMF ¶ 10; Ex. 12.) The medical examiner issued a certificate authorizing Lee to return to work without restrictions, but suggested that he make plans to follow up with his primary care provider. (SMF ¶ 10; Ex. 1, 358:24-360:24; 374:2-375:15; Ex. 11; Ex. 12.) Lee's primary care provider, Dr. Beamon-Webb, signed a letter on June 30, 2011, authorizing him to return to work immediately without restrictions. (SMF ¶ 11; Ex. 1, 367:17-19, 374:2-375:15; Ex. 13.) On July 5, 2011, Swift's medical examiner noted in Lee's medical report that Lee had followed up with his primary care provider and met the standards to return to work with "no limiting condition." (SMF ¶ 12; Ex. 17.) That same day, Lee and Quinn drove from Memphis, Tennessee to Indiana. (SMF ¶ 12; Ex. 6, at 15.) Lee and Quinn returned to Memphis on July 22, 2011. (SMF ¶ 13.) On that date, Quinn told him that he (Quinn) "didn't think my being on [Quinn's] truck would work." (SMF ¶ 13; Ex. 14; Ex. 1, 221:7-14.) Lee claims that, at some point, Quinn asked him about his age. (SMF ¶ 14; Ex. 1, 195:6-9.)

Robert Pompa mentored Lee from July 24 to July 29, 2011. (SMF ¶ 15; Ex. 6, at 25-28.) Lee wrote a formal complaint against Pompa at the same time that Pompa wrote a complaint against Lee. (SMF ¶ 18.) Lee testified that he did not know the subject matter of Pompa's complaint against Lee; Lee's complaint was that Pompa was

text messaging while driving. (Id.; Ex. 1, 250:10-251:3, 254:4-7, 257:18-259:24, 261:3-263:13; Ex. 15.) Freddie Cottrell mentored Lee from July 31 to August 5, 2011. (SMF ¶ 19; Ex. 6, at 29.) Lee felt that Cottrell was mean and admitted that "him I wanted to do something to." (SMF ¶ 21; Ex. 1, 268:3-10, 273:1-4.) Lee testified that, at some point, Cottrell said he thought Lee was too old. (SMF ¶ 22; Ex. 1, 277:6-7.) Lee told Cottrell either that he was going to kick Cottrell's "ass" or that Cottrell "need[ed] his ass kicked." (SMF ¶ 24; Ex. 1, 279:17-19, 280:18-19; Ex. 16; Ex. 24.)

Swift has a policy prohibiting threats against its employees. Human Resources and/or the Security Department investigate any and all complaints of threats and promptly take corrective action against any employee who engages in such behavior. (SMF ¶ 31; Ex. 24; Ex. 1, 197:10-21.) Swift's policy regarding threats is uniformly applied to all employees, regardless of age, disability or any other characteristic. (SMF ¶ 32; Ex. 24.) It is undisputed that all three of Lee's mentors reported that Lee had threatened them. (SMF ¶ 33; Ex. 1, 168:24-169:2, 312:15-21.) Pompa had reported to Swift that Lee had used inappropriate language and made verbal threats of violence toward him between July 24 and July 29, 2011, while Pompa was training Lee. (SMF ¶ 34; Ex. 24.) Specifically, Pompa reported that Lee made the following statements to him: (1) "I don't give a [expletive] about your feelings;" (2)

-6-

"I'm not putting up with this [expletive] anymore;" (3) "I don't owe you any respect;" and (4) "I haven't done nothing to you yet, but you keep on being a smart ass and see what happens to you." (SMF ¶ 35; Ex. 24.) Quinn reported that Lee had used threatening language and racial slurs against him, including, "look here ["N" word] I don't care what you do, the best thing to do is get on the goddamn road and you'll live longer." (SMF ¶ 36; Ex. 24.) Lee admitted that he used the "N" word with Quinn. (SMF ¶ 37; Ex. 1, 190:14-16.) Cottrell reported that Lee had threatened to "kick my ass." (SMF ¶ 38; Ex. 24; Ex. 16.) Cottrell also stated that Lee told him "to keep my mouth shut if he needed anything out of me he ask [sic]" and that "[a]ll Swift mentors must be stupid and dumb. I had three of them." Cottrell said Lee refused to do anything Cottrell asked him to do, and that Lee was "the most disrespectful student I have ever had." (SMF ¶ 38; Ex. 16.)

On or about August 2, 2011, Swift's Human Resources Department opened an investigation into the complaint made by Pompa that Lee had used inappropriate language and made threats of violence against Pompa. (SMF ¶ 39; Ex. 24; Ex. 1, 313:2-314:22.) The investigation also included Lee's complaint that Pompa had been text messaging while he was driving. (SMF ¶ 39; Ex. 24; Ex. 1, 297:12-299:17.) Swift's investigation into these complaints included interviews with Lee, his three mentors, an employee who had trained with Quinn, an employee who had trained with Pompa, and

an employee who had trained with Cottrell. (SMF ¶ 40; Ex. 24; Ex. 1, 313:2-314:22.) Human Resources was able to corroborate Pompa's allegations against Lee and discovered that Lee had engaged in similar disrespectful and threatening behavior with Quinn and Cottrell as well. (SMF ¶ 41; Ex. 24.)[2] The similarities included Lee's aggressive use of profanity and racially derogatory language, his disrespectful attitude towards his mentors, his insubordination, and his threats towards them. (SMF ¶ 41; Ex. 24.) Rachel Monti, Swift's Vice President of Human Resources, made the final decision to terminate Lee's employment. (SMF ¶ 42; Ex. 24.) Monti made her decision without regard to any unlawful criteria, including Lee's age or alleged disability. (Id.) Monti's reasons for terminating Lee's employment were the documented verbal and written complaints made by Lee's mentors, Lee's repeated conflicts with his mentors, and the mentors' allegations that Lee had threatened to physically harm them. (SMF ¶ 43; Ex. 24.) Lee's mentors had no involvement in Monti's decision to terminate Lee's employment. (SMF ¶ 44; Ex. 24.)

Swift has terminated many employees for having conflicts with other drivers. (SMF ¶ 47; Ex. 24, Ex. 1, 332:1-7.) For example, from January 1, 2009 to September 1, 2011 (the day Lee was

---

[2]Human Resources also made a determination with respect to Lee's complaint that Pompa had been text messaging while he was driving. Pompa admitted to the violation of company policy and was disciplined. (SMF ¶ 41; Ex. 24.)

terminated), Swift had terminated approximately sixty-eight (68) employees, ranging in age from twenty-one (21) to sixty-eight (68) years old, for having conflicts with other drivers. (SMF ¶ 47; Ex. 28; Ex. 24.) Swift's employee handbook contains an extensive workplace violence policy prohibiting threats of physical harm, (Ex. 3, §2, at 23), as well as a non-exhaustive list of "Prohibited Conduct" that clearly states that such conduct "will not be tolerated by Swift and may lead to immediate termination of employment." (SMF ¶ 50; Ex. 3, § 2, at 10-11, 23.) Among the prohibited conduct listed in the handbook are the following examples:

    (10)    Threats, coercion or use of insulting, offensive or abusive language or conduct toward others, including employees . . . .

    (11)    Insubordination, including refusal or failure to perform work in accordance with Instruction.

    (17)    A pattern of harassment or an extremely serious single incident of harassment.

    (34)    Unauthorized physical contact or threats with a Swift employee . . . .

(Id.)

Lee denies that he is disabled, he admits that he did not have a disability when Swift hired him, and Swift believed that Lee could perform all the functions of his job at the time he was hired. (SMF ¶¶ 51-55; Ex. 1, 316:11-20; 319:6-9; 325:5-327:10; Ex. 24.) Further, no supervisors made any age or disability related comments to Lee, Lee has no knowledge of whether anyone was hired

to replace him after he was terminated, and Lee never complained to Swift's management or Human Resources about being discriminated against on the basis of age or disability. (SMF ¶¶ 61-64; Ex. 1, 337:8-338:7; 332:8-10; 333:4-10; Ex. 24.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Rule 56 Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant shows that "no genuine dispute as to any material fact" exists, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant can show the absence of a genuine dispute of material fact using "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The movant carries the burden of proving the absence of a genuine issue of material fact, and all evidence and justifiable inferences are drawn in favor of the non-movant. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Galloway v. Anuszkiewicz, No. 12-3367, 2013 WL 1149679, at *3 (6th Cir. Mar. 21, 2013) ("When determining whether the movant has met [its] burden, we view the evidence in the light most favorable to the nonmoving party."). Summary judgment is proper "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727 (2d ed. 1998).

Once the moving party has submitted a properly supported motion for summary judgment, if the non-moving party fails to address the moving party's assertion of fact, the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Stanciel v. Donahoe, No. 11-11512, 2013 WL 1914314, at *1 (E.D. Mich. May 8, 2013) (same). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Nilles v. Givaudan Flavors Corp., No. 12-3673, 2013 WL

1272554, at *7 (6th Cir. Mar. 29, 2013) (rejecting the argument that courts must accept any remotely possible hypothetical that would further the plaintiff's cause).

**B. Age Discrimination**

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." Brooks v. Davey Tree Expert Co., 478 F. App'x 934, 940 (6th Cir. 2012). "Regardless of the type of evidence submitted, the burden of persuasion remains on ADEA plaintiffs to demonstrate 'that age was the 'but-for' cause of their employer's adverse action.'" Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 811 (6th Cir. 2011). Lee does not contend that he has any direct evidence of age discrimination; thus, the court must consider whether he has presented sufficient circumstantial evidence of age discrimination to survive summary judgment.

The analysis of age discrimination claims based on circumstantial evidence is guided by the well-established McDonnell Douglas/Burdine burden-shifting framework. See, e.g., Brooks, 478 F. App'x at 940; Provenzano, 663 F.3d at 811–12. "In the first step, the employee carries the initial burden of establishing a

*prima facie* case of age discrimination[.]" Provenzano, 663 F.3d at 812. To establish a *prima facie* case of age discrimination, a plaintiff must show that: "(1) he [or she] was at least 40 years old at the time of the alleged discrimination; (2) he [or she] was subjected to an adverse employment action; (3) he [or she] was otherwise qualified for the position; and (4) he [or she] was replaced by a younger worker." Weatherby v. Fed. Exp., 454 F. App'x 480, 489 (6th Cir. 2012) (internal quotation marks omitted); see also Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 521 (6th Cir. 2008). "The fourth element may be satisfied by showing that similarly situated non-protected employees were treated more favorably." Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 317 (6th Cir. 2007) (internal quotation marks omitted). "If the plaintiff makes this showing, 'the burden of production [then] shifts to the defendant to articulate a nondiscriminatory reason for its action.'" Marsh v. E. Associated Estates Realty Corp., No. 12-1594, 2013 WL 1395896, at *6 (6th Cir. Apr. 5, 2013) (quoting Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 594 F.3d 476, 485 (6th Cir. 2010)). "Once a non-discriminatory reason has been offered, the burden of production returns to the plaintiff to show that the defendant's legitimate reasons are merely pretextual, and that she was in fact subjected to the adverse action on the basis of her age. Generally, a plaintiff demonstrates pretext by offering evidence that '(1) the employer's

-13-

stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action.'" Id. (quoting Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 545 (6th Cir. 2008)).

It is undisputed that Lee was at least 40 years old and suffered an adverse employment action by being terminated. However, even assuming, *arguendo*, that he was qualified for the position, the court finds that Lee has failed to sufficiently establish a *prima facie* case of age discrimination because he has failed to show that he was replaced by a younger worker. To be "replaced," another employee must be hired or reassigned into the plaintiff's position. Mickey, 516 F.3d at 522. The replacement must be substantially younger than the plaintiff to satisfy the fourth prong of the *prima facie* case. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996). Lee has not presented any evidence to show that anyone filled his position after his termination. In addition, he has not shown that a similarly situated employee outside his protected class was treated differently. To show that another employee is "similarly situated," a plaintiff need not demonstrate an "exact correlation," but instead must demonstrate that he and the other employee are similar in "all of the relevant aspects." Laws v. HealthSouth N.

Ky. Rehabilitation Hosp. Ltd. P'ship, 508 F. App'x 404, 411 (6th Cir. 2012) (citing Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir. 1998)) (internal quotation marks omitted). In the disciplinary context, the Sixth Circuit has held that "this requires that the plaintiff and proposed comparator have engaged in acts of 'comparable seriousness.'" Dickens v. Interstate Brands Corp., 384 F. App'x 465, 468 (6th Cir. 2010) (quoting Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002)). "Factors to consider include whether the individuals dealt with the same supervisor, were subject to the same standards . . . and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Arnold v. City of Columbus, Nos. 11-3459, 11-3468, 11-3815, 2013 WL 628447, at *6 (6th Cir. Feb. 20, 2013) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)) (internal quotation marks omitted). Lee has failed to identify any similarly situated employee outside his protected class who was treated differently. Thus, Swift is entitled to summary judgment on the age discrimination claim.

**C. Disability Discrimination**

The Americans with Disabilities Act ("ADA") prohibits an employer from discriminating against a qualified individual with a disability "because of the disability" in various stages of the employment process, including discharge. 42 U.S.C. § 12112(a). As

Lee has not alleged any direct evidence of disability discrimination, he must prove his case through the use of circumstantial evidence. In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that he or she (1) is disabled; (2) was otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse action; (4) the employer knew or had reason to know of plaintiff's disability; and (5) plaintiff was replaced or the job remained open. Rosebrough v. Buckeye Valley High Sch., 690 F.3d 427, 431 (6th Cir. 2012) (citing Plant v. Morton Int'l Inc., 212 F.3d 929, 936 (6th Cir. 2000)). "Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business." Keith v. Cnty. of Oakland, 703 F.3d 918, 923 (6th Cir. 2013) (citation omitted).

Lee has failed to present any evidence to show that he is disabled or that he was replaced or the job remained open after he was terminated. An individual is "disabled" if that person has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(1). Lee has presented no evidence to support any of these criteria. To the contrary, Lee testified at his deposition that he is not disabled, he did not have a disability when Swift hired him, and he was able

to perform all functions of his job without any accommodation. After Lee was released from the hospital for the urinary problem, he was seen by Swift's medical examiner, who issued a certificate authorizing Lee to return to work. Lee's primary care physician also signed a letter authoring Lee to return to work without restrictions. A few days later, Lee again saw Swift's medical examiner, who noted that Lee had followed up with his physician and met the standards to return to work with no limiting condition. That same day, Lee drove from Memphis to Indiana with Quinn.[3] Moreover, there is no evidence that Swift regarded Lee as being disabled. No supervisors ever made any disability-related comments about Lee, Lee never complained to management or Human Resources about being discriminated against on the basis of disability, and he never requested any accommodations for his "disability." Finally, Lee has not presented any evidence to show that he was replaced or the job remained open after he was terminated. Thus, Swift is entitled to summary judgment on the ADA claim.

## D. Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) plaintiff engaged in protected activity under Title VII; (2) the exercise of his protected rights was known by the defendant; (3) the defendant thereafter took adverse

---

[3]Because Lee is not disabled, he also cannot meet the fourth element of the *prima facie* case – that Swift knew or had reason to know of his alleged disability.

employment action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013). The Title VII anti-retaliation provision has two clauses, making it unlawful for an employer to discriminate on the basis that an employee has "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (2012); Davis, 940 F. Supp. 2d at 797. Under both the opposition and participation clauses, the plaintiff has the burden of proving that "but-for" his protected activity, the employer would not have taken adverse action against him. See Univ. of Texas Sw. Med. Ctr. v. Nassar, No. 12-484, 2013 U.S. LEXIS 4704, at *38, 42 (Jun. 24, 2013). The only allegation contained in Lee's complaint that touches on any of these elements is his use of the word "[r]etaliation." In the EEOC charge that he attached to the complaint, Lee states that he "filed several grievance [sic] with my employer," but he does not allege that these grievances had anything to do with any activity that is protected by Title VII. (EEOC Charge, ECF No. 1-1.) Because Lee has not presented any evidence to show that he engaged in protected activity, Swift is entitled to summary judgment on the retaliation claim.

### III. RECOMMENDATION

For the above reasons, it is recommended that Defendant's Motion for Summary Judge be granted.[4]

Respectfully submitted,

          s/ Tu M. Pham
          TU M. PHAM
          United States Magistrate Judge

          December 12, 2013
          Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FED. R. CIV. P. 72(b)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**

---

[4] Based on the conclusion that Lee has failed to satisfy his *prima facie* case on all of his claims, the court need not address the second or third stages of the McDonnell Douglas/Burdine burden-shifting analysis.